**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEANETTE DRIEVER,

       *Plaintiff*,

   v.

UNITED STATES OF AMERICA *et al.*,

       *Defendants*.

Civil Action No. 19-1807 (TJK)

<u>**MEMORANDUM OPINION**</u>

Jeanette Driever, a former federal inmate, has sued various government entities and officials to challenge a Bureau of Prisons policy that authorizes housing transgender prisoners according to their gender identity.  Proceeding *pro se*, she asserts violations of her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, as well as violations of the Religious Freedom Restoration Act, the Administrative Procedure Act, and the Federal Tort Claims Act.  For the reasons explained below, the Court will grant Defendants' motions to dismiss and deny as futile Driever's second motion to amend her complaint.

I.    **Background**

    A.    **Statutory and Regulatory Background**

The BOP may place a prisoner in "any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable."  18 U.S.C. § 3621(b).  Among other considerations, the BOP must assess "the history and characteristics of the prisoner" and "the resources of the facility contemplated."  *Id.*  Regulations promulgated to implement the Prison Rape Elimination Act of 2003 (PREA), 34 U.S.C. § 30301, 28 C.F.R. § 115 ("PREA Regulations"), also require

the BOP to assess all inmates during intake and upon facility transfer, to determine the prisoner's

(1) risk of becoming a victim of sexual abuse, or (2) propensity to commit sexual abuse.  *See* 28

C.F.R. § 115.41.  This process, known as "risk screening," helps determine an inmate's housing

assignment.  *See id*. § 115.42.  The PREA Regulations specifically address risk screening and

housing designation for transgender prisoners:

> [i]n deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

*Id.* § 115.42(c).

In January 2017, the BOP issued Program Statement 5200.04, memorialized in its

"Transgender Offender Manual" ("Manual").  Defs.' Memorandum in Support of Motion to

Dismiss Official Capacity Claims ("Defs.' MTD Mem. I"), ECF No. 13 at 3.  The Manual

"offer[s] advice and guidance on unique measures related to treatment and management needs of

transgender inmates and/or inmates with [Gender Dysphoria], including designation issues[,]" *id.*

(citing Manual ¶ 5).  It also delineates standards for the BOP's Transgender Executive Council

(TEC), which oversees the "treatment and management needs of transgender inmates and/or

inmates with GD, including designation issues." *Id.*  In May 2018, the BOP issued and

incorporated a "Change Notice" to the Manual, which added new details to certain Manual

provisions.  *Id.* at 3 n.1, 3.  Relevant here are these additions:

> the TEC, on a case-by-case basis, will recommend placement of transgender inmates 'us[ing] biological sex as the initial determination for designation;' *id* ¶ 5; (2) the TEC will consider the health and safety of transgender inmates, 'exploring appropriate options available to assist with mitigating risk to the transgender offender, to include but not limited to cell and/or unit assignments, application of management variables, programming missions of the facility, etc.;' *id.*, and (3) the

> TEC will consider 'whether placement would threaten the management
> and security of the institution and/or pose a risk to other inmates in the
> institution (e.g., considering inmates with histories of trauma, privacy
> concerns, etc.).'

*Id.* at 4 (citing Manual ¶ 5).

### B.    This Lawsuit

Driever was incarcerated at Carswell Federal Medical Center ("FMC Carswell") for two

stints before she was released from custody in April 2018.  Defs.' MTD Mem. I at 4, n.3;

Declaration of Corinne M. Nastro ("Nastro Decl.") ¶¶ 4-5, Attach. B.  In June 2019—over a year

later—she filed this suit.  In her initial (and currently operative) complaint, she claims that

Program Statement 5200.04 violates her rights because it permits the BOP to place transgender

inmates in women's correctional institutions.  Complaint ("Compl."), ECF No. 1 ¶ 18.  In

particular, she objects to transgender—mainly male-to-female—inmates sharing "cells, locker

areas, showers, toilets, and other areas where bodily privacy is normatively protected" with

female inmates.  Compl. ¶ 32.  She alleges that doing so:

> creates a situation that incessantly violates the privacy of female
> inmates, endangers the physical and mental health of the female
> Plaintiffs and others, including prison staff, increases the potential for
> rape, increases the potential for consensual sex which is nonetheless
> prohibited by prison regulations, increases the risk for other forms of
> physical assault, violates the Plaintiffs' right to freely exercise their
> religion, and causes mental and emotional distress that must be
> promptly mitigated by preliminary and permanent injunctive relief.

*Id.* at introduction.  She also claims that while incarcerated, the BOP forced her to undress in

front of individuals whom she considers members of the opposite sex, in conflict with the tenets

of her Christian faith that require modesty.  *See id.* ¶¶ 31, 38.  Finally, she alleges that

transgender inmates sexually harassed her and that she was "threatened with physical violence

for speaking out about the FBOP policies on transgender inmates."  *Id.* ¶ 37.  She asserts

violations of her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as the Religious Freedom Restoration Act (RFRA). She names as defendants the United States, United States Attorney General William Barr, current BOP Director Michael Carvajal, former Warden of FMC Carswell Judy Upton, "all BOP Wardens," "all BOP Directors of Psychology Services," and "unknown BOP employees[,]" in both their official and individual capacities. *Id.* at caption. She requests injunctive and declaratory relief as well as monetary damages, *id.* ¶¶ 41–7, and seeks to bring this matter as a class action by requesting relief on behalf of similarly situated federal female inmates. *Id.* ¶ 2.

In January 2020, Defendants moved to dismiss the official-capacity claims, Defs.' MTD Mem. I, and the individual-capacity claims, Defs.' Memoranda in Support of Motion to Dismiss Individual Capacity Claims ("Defs.' MTD Mem. II"), ECF No. 15. The next day, the Court ordered Driever to file an opposition to Defendants' motions by February 21, 2020. ECF No. 16. She requested and received an extension, ECF No. 17, and the Court ordered her to file her opposition by March 20, 2020. *See* Minute Order of Feb. 26, 2020. The Court also advised her that she had violated Local Civil Rule ("LCvR") 7(m) by not conferring with Defendants; the Court instructed her to comply with the Local Rules. *See id.* Rather than file an opposition, on March 27, Driever moved to amend the complaint. ECF No. 18. The Court denied the motion without prejudice for failure to comply with LCvR 7(m). *See* Minute Order of Mar. 31, 2020.

In June 2020, Driever again moved to amend her complaint ("Pl.'s MTA II"), ECF No. 19, and this time included a copy of the proposed amended complaint ("Am. Compl."), ECF No. 19-1.[1] The amended complaint adds claims under the Federal Tort Claims Act (FTCA), 28

---

[1] Driever's second motion to amend also includes a request for this case to be referred to a magistrate judge for mediation. Pl.'s MTA II at 1. Under the Local Rules, district judges may

U.S.C. § 1346(b), for negligence and intentional infliction of emotional distress, Am. Compl.

¶¶ 14, 41–5, and a claim for violating the Administrative Procedure Act (APA), 5 U.S.C. § 702,

Am. Compl. ¶¶ 19, 49–50.  The amended complaint also proposes to join two more *pro se*

plaintiffs, Rhonda Fleming and Stacey Shanahan, *id*. at caption, ¶¶ 2–3, and four more

defendants: former BOP Director Charles Samuels, Warden E. Strong (current warden of the

Federal Correctional Institution in Tallahassee, Florida) ("FCI Tallahassee"), Warden C. Coil

(former warden of FCI Tallahassee), and Warden Julie Nichols (former warden of the Federal

Correctional Institution in Waseca, Minnesota) ("FCI Waseca"), *id.* at caption, ¶¶ 7–10, 22, 28,

49.[2]

The next month, Defendants opposed the second motion to amend ("Defs.' MTA II

Opp."), ECF No. 21.  The Court determined that many issues raised in the opposition overlap

with those raised in Defendants' motions to dismiss to which Driever had failed to respond.  *See*

Minute Order of August 10, 2020.  The Court therefore provided her with another chance to file

a combined brief opposing Defendants' motions to dismiss and in reply supporting her second

motion to amend.  *See id*.  In August, Driever filed a combined brief ("Pl.'s Comb. Opp."), ECF

No. 23, to which Defendants responded, ECF Nos. 25, 26.

---

refer parties to mediation before a magistrate judge following either the parties' mutual
submission to mediation or their response to a show cause order explaining "why mediation
would not be appropriate[.]"  LCvR 84.4(a).  Defendants have not consented or joined in the
request for mediation, and instead seek dismissal of the entire case.  And the Court does not find
that mediation is appropriate.  For these reasons, the Court denies her request.

[2] Driever's proposed amended complaint abandons some claims in her original complaint,
including her individual capacity claims against Barr and Carvajal.  *See* Am. Compl. ¶¶ 4–6, 8.
The amended complaint also does not refer to claims asserting violations of her Fourth or
Fourteenth Amendment rights.

## II.     Legal Standards

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant a plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).  A district court has an obligation to consider a pro se plaintiff's "filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), and hold such complaints "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Even so, a court need not accept inferences unsupported by facts alleged in the complaint, nor must it accept a plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When reviewing a challenge under Rule 12(b)(1), a court may consider documents outside the pleadings to assess if it has jurisdiction. *See Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).  By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment" when a court considers documents extraneous to the pleadings. *Haase v. Sessions*, 835 F.2d 902, 905 (D.C. Cir. 1987).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

claim is facially plausible when the pleaded factual content, when accepted as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In ruling on a motion to dismiss for failure to state a claim, a court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Generally, a "plaintiff cannot amend [her] complaint *de facto* to survive a motion to dismiss by asserting new claims for relief in [her] responsive pleadings." *Coll. Sports Council v. Gov't Accountability Office*, 421 F. Supp. 2d 59, 71 n. 16 (D.D.C. 2006). But Federal Rule 15 instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (explaining that Rule 15 "is to be construed liberally"). Even so, leave to amend may not be granted when amendment would be futile. *See Richardson v. United States*, 193 F.3d 545, 548–49 (1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.   Analysis

Before the Court are Defendants' motions to dismiss both the official-capacity and individual-capacity claims and Driever's second motion to amend her complaint. Given the intertwined nature of the issues these motions present, the Court considers how they affect the parties and claims raised in both the original complaint and the proposed amended complaint at the same time. As explained below, the Court concludes that Defendants' motions must be granted, the original complaint must be dismissed, Driever's second motion to amend must be denied as futile, and the case must be dismissed.

7

### A.   Parties

#### 1.   Driever's Proposed Class Action and Additional Plaintiffs

In both the complaint and proposed amended complaint, Driever asserts her intention to bring this matter as a class action on behalf of "similarly situated" plaintiffs.  Compl. at caption, ¶¶ 2, 37; Am. Compl. at caption, ¶¶ 40, 62.  But a *pro se* litigant can represent only herself in federal court and cannot serve as counsel for others.  *See* 28 U.S.C. § 1654; *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984).  And Circuit precedent makes clear that a *pro se* litigant "is simply not an adequate class representative."  *DeBrew v. Atwood*, 792 F.3d 118, 132 (D.C. Cir. 2015) (citation omitted).  Thus, Driever's class-action claims must be dismissed.

In the proposed amended complaint, Driever also seeks to join Fleming and Shanahan as additional plaintiffs.  Am. Compl. at caption, ¶¶ 2–3.  The two are apparently still in federal custody at FCI Tallahassee and were once assigned to FCI Waseca.  *Id.* at 2–3.  But neither has submitted the requisite filing fees or applications to proceed *in forma pauperis* (IFP).[3]  *See* 28 U.S.C. § 1915.  Thus, they may not be joined as plaintiffs.[4]

---

[3] Under the Prison Litigation Reform Act (PLRA), "all prisoner-litigants must pay filing fees in full."  *Asemani v. USCIS*, 797 F.3d 1069, 1072 (D.C. Cir. 2015).  A prisoner who qualifies for IFP status, however, need not pay the full filing fee at the time suit is filed.  *Id.* (citing 28 U.S.C. § 1915(a)(1)).  Rather, a plaintiff may "pay the filing fee in installments over time."  *Id.* (citing 28 U.S.C. § 1915(b)).

[4] The Court declines to join Fleming as a plaintiff in this matter for other reasons as well.  To begin with, she is barred from filing IFP under Section 1915(g).  *See Fleming v. Medicare Freedom of Info. Grp.*, No. 15-cv-1135 (EGS/GMH), 2018 WL 3549791 at *3 (D.D.C. July 24, 2018) (citing *Fleming v. Ratliff*, 235 F.3d 1341, WL 1672906 at *1 (5th Cir. 2000) (per curiam) (unpublished table disposition)); *Fleming v. Riehm*, No. 16-cv-3116 (PJS/SER), 2016 WL 7177605 at *1 (D. Minn. Dec. 9, 2016).  She is also a plaintiff in currently active, earlier-filed, litigation in the Northern District of Texas.  *See Fleming v. United States*, Civ. A. No. 18-0004 (N.D. Tex. filed Jan. 11, 2018).  That case is much like this one, raising various challenges to the

### 2.   Unknown Government Employee Defendants

Driever also names unidentified wardens and other unidentified BOP and DOJ employees as defendants in both the original and proposed amended complaints, *see* Compl. at caption, ¶ 7; Am. Compl. at caption, ¶ 13.  But the Local Rules of this Court require that a plaintiff "filing *pro se in forma pauperis* must provide in the [complaint's] caption the name and full residence address or official address of each party."  LCvR 5.1(c)(1).  Driever has not provided this information.  For that reason, the claims against these unidentified parties must be dismissed.[5]

### B.   Constitutional Claims

As described above, Driever brings various claims grounded in the Constitution against the Defendants in both their official and unofficial capacities.  Compl. ¶¶ 4–7; Am. Compl. ¶¶ 4–11.  She requests monetary damages and both injunctive and declaratory relief.  For the reasons below explained, all these claims must be dismissed.

---

Manual and BOP policies about transgender inmates.  *See id.* at ECF No. 6 (Compl. Jan. 24, 2018) (severed from *Rhames v. United States*, No. 7:17-cv-00009-O (N.D. Tex.) at ECF No. 153 (Order Jan. 11, 2018)).  "Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously."  *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (citing *Hilton Hotels Corp. v. Weaver*, 325 F.2d 1010, 1010 (D.C. Cir. 1963) (per curiam)), *cert. denied*, 376 U.S. 951 (1964).

[5] In any event, Driever's claims against these unidentified defendants and proposed defendants fail for the same reasons that her claims against *identified* government employees also fail, as explained below.  The Court also notes that she does not appear to assert enough facts for this Court to exercise personal jurisdiction over these unknown individuals.  *See* Fed. R. Civ. P. 12(b)(2); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (holding that to subject a defendant to a judgment in personam, the defendant must either (1) be present within territory of forum, or (2) have certain minimum contacts with it so that the suit does not impede fair play and substantial justice) (citations and internal quotation marks omitted).  "Conclusory statements" or a "bare allegation of conspiracy or agency" are insufficient to establish personal jurisdiction.  *First Chicago Int'l v. United Exch. Co.,* 836 F.2d 1375, 1378–79 (D.C. Cir. 1988).

### 1.   Injunctive and Declaratory Relief

Under Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988).  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To satisfy the standing requirement, a plaintiff must establish at a minimum that (1) she has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "a causal connection" exists between the injury and the challenged conduct, and (3) a favorable decision will likely redress the injury.  *Id*. at 560–61 (citations and internal quotation marks omitted).

Driever has no standing to pursue a claim for injunctive or declaratory relief based on the Manual.  To possess standing to pursue a claim for prospective injunctive relief, a plaintiff must be subject to "injury or threat of injury" that is "[both] real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citations and internal quotation marks omitted).  But Driever has not been incarcerated for over two years.  *See* Am. Compl. at Introduction*;* Defs.' MTD Mem. I at 4, n.3; Nastro Decl. ¶¶ 4–5, Attach. B.  And past injury will not support standing to pursue prospective injunctive relief.  *City of Los Angeles*, 461 U.S. at 95–6 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).  "[S]tanding to seek the injunction requested depend[s] on whether [s]he [is] likely to suffer future injury" from the challenged actions.  *Id.* at 105.  Because she lacks standing to pursue injunctive relief, this Court has no subject-matter jurisdiction over any such claim.  *See Zakiya v. United States*, 267 F. Supp. 2d 47, 55 (D.D.C. 2003) (dismissing claims for injunctive relief "[b]ecause plaintiff is

no longer incarcerated, [and] does not allege that it is likely he will be incarcerated in a federal prison again").

Driever's pursuit of declaratory relief suffers the same defect. "In a case of this sort, where the plaintiff[] seek[s] declaratory and injunctive relief, past injuries alone are insufficient to establish standing.  Rather, [a plaintiff] must show he is suffering an ongoing injury or faces an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *see also Clapper v. Amnesty Int'l*, 568 U.S. 398, 422 (2013) (holding that plaintiffs seeking declaratory judgment did not have standing because "they cannot demonstrate that the future injury they purportedly fear is certainly impending").[6]

For these reasons, the Court will dismiss all claims for injunctive or declaratory relief stemming from any of Driever's asserted constitutional violations in the original or proposed amended complaints.

### 2.     Monetary Damages

Remaining are Driever's claims for monetary damages, which fall into two categories— those brought against Defendants in their official and unofficial capacities.  As explained below, however, all these claims must be dismissed.

### a.     Official Capacity Claims

Driever brings various constitutional claims against some Defendants in their official capacities.  Compl. ¶¶ 4–7; Am. Compl. ¶¶ 4–11.  "[A]n official [] capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159,

---

[6] Driever's argues that "she is [currently] [] traumatized in her community whenever she enters a[ny] federal government building . . . and she seeks a declaratory judgment to mandate sex segregated restrooms remain the norm."  Pl's. Comb. Opp. ¶ 1.  But this entirely unrelated allegation, which has nothing to do with the BOP or its policies, is not pleaded in the current or proposed amended complaint.

166 (1985) (internal citations omitted).  But the United States, its agencies, and its employees are immune from liability for monetary damages unless the United States expressly consents to suit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted).  Driever has not identified any consent to suit for monetary damages for the constitutional violations alleged here.  And without such a waiver, Driever cannot prevail on claims for monetary damages against the United States and any federal official sued in his or her official capacity.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  The Court must therefore dismiss these claims for lack of subject-matter jurisdiction.

### b.      Individual Capacity Claims

Driever also brings *Bivens* claims against some Defendants[7] in their *individual* capacities, Am. Compl. at ¶¶ 7, 9, 10–11, for—as best the Court can tell—violating her First Amendment right to free exercise of religion, Fifth Amendment rights of due process and equal protection, and Eighth Amendment right of protection from cruel and unusual punishment, Am. Compl. at ¶¶ 15, 33, 55, 58.[8]

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied right of action for damages

---

[7] Driever's initial complaint names all defendants in their individual capacity, raising *Bivens* claims against Barr, Carvajal, and Upton. The proposed amended complaint only explicitly brings individual capacity claims against newly added defendants Samuels, Strong, Coil, and Nichols. Am. Compl. ¶¶ 7–10.  Given that the analysis for all these defendants is similar, the Court will analyze the *Bivens* claims against all individuals named in their individual capacity in either complaint.

[8] The original complaint also refers to the Fourth and Fourteenth Amendments, but the it lacks any factual basis for claims for violating these amendments.  And while a court must construe the complaint in the light most favorable to the plaintiff, Driever "must furnish 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Tyler v. D.C. Housing Auth.*, 113 F. Supp. 3d 88, 90 (D.D.C. 2015) (quoting *Twombly*, 550 U.S. at 555).

against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, (2001). *Bivens* provides federal courts with "discretion in some circumstances to create a remedy against federal officials for constitutional violations, but [courts] must decline to exercise that discretion where 'special factors counsel[ ] hesitation' in doing so." *Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008) (quoting *Bivens*, 403 U.S. at 396). The constitutional rights at issue in *Bivens* concerned a citizen's right to be free from unreasonable searches and seizures under the Fourth Amendment. Since then, the Supreme Court has expanded *Bivens* to only two other causes of action:

> a claim of gender discrimination in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a claim by an employee against her employer, a Congressman, who had fired her); and a claim of cruel and unusual punishment in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a claim against the individual federal corrections officials who mistreated a prisoner). Significantly, the Supreme Court has never extended its holdings in these two cases beyond their context.

*Mejia-Mejia v. U.S. Immigration and Customs Enforcement*, No. 18-1445 (PLF), 2019 WL 4707150 at *4 (D.D.C. Sept. 26, 2019). "Expanding the *Bivens* remedy is now considered a disfavored judicial activity," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), and the Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants[,]" *id.*

Driever alleges that Defendants may be held liable for monetary damages under *Bivens* because they played a role in developing and instituting the BOP's transgender housing policy. *See* Am. Compl. ¶ 7. The Court cannot agree, for three reasons: (1) her claims are not a recognized *Bivens* violation; (2) the relevant factors counsel against extending *Bivens* here; and (3) Defendants, at any rate, are entitled to qualified immunity.

First, Driever's claims do not fall within the class of recognized *Bivens* claims. She does not allege a search and seizure violation (*Bivens*), employment discrimination (*Davis*), or an issue with prison medical treatment (*Carlson*). Instead, her complaint and proposed amended complaint are best read to make out a First Amendment religious discrimination claim, a Fifth Amendment equal protection claim, and an Eighth Amendment claim for cruel and unusual punishment. But the Supreme Court has explicitly "declined to extend *Bivens* to a claim sounding in the First Amendment." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (citing *Bush v. Lucas*, 462 U.S. 367 (1983)). And while it recognized a *Bivens* claim in the Fifth Amendment equal-protection context in *Davis v. Passman*, the Court has not expanded this remedy to cover the prison context or the kind of policy-based claim advanced by Driever. Finally, the Court has not extended the Eighth Amendment claim recognized in *Carlson* beyond the prison medical-care context. *See Minneci v. Pollard*, 565 U.S. 118, 124–126 (2012) (collecting cases); *see also Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008) (rejecting *Bivens* suit for invasion of privacy).

Second, several factors counsel heavily against the extension of *Bivens* in this case. *Abbasi*, 137 S. Ct. at 1863, instructs that "when alternative methods of relief are available, a [subsequent] *Bivens* remedy usually is not." Driever had access to alternative and more appropriate mechanisms to challenge the BOP policy. These avenues included pursuing equitable relief when she was incarcerated. *See id.* at 1863; *see also Corr. Servs. Corp.*, 534 U.S. at 74. Similarly, a 28 U.S.C. § 2241 habeas remedy "would have provided a faster and more direct route to relief than a suit for money damages." *Abbasi*, 137 S. Ct. at 1863.[9] She

---

[9] Driever may *now* lack standing to seek equitable or habeas relief, but this is of no consequence; her inability to pursue relief through these alternative remedies at this point does not convert this

could also have availed herself of the BOP "Administrative Remedy Program," which permits

inmates to raise such concerns regarding personal safety through a formal review process.  *See*

Defs.' MTD Mem. II at 15 (citing 28 C.F.R. §§ 542.10–542.19.4).  Finally, the BOP specifically

maintains its own "Sexually Abusive Behavior Prevention and Intervention Program," which

serves to address prison misconduct, "including inmate-on-inmate assault, according to its

comprehensive Inmate Discipline Program."  *Id.* at 15–16.

    Other factors weigh against extending *Bivens* as well.  "*Bivens* suits are not the

appropriate mechanism to litigate objections to general government policies."  *Mejia-Mejia*,

2019 WL 4707150 at *4.  This is because the implied causes of action recognized in *Bivens* and

its progeny generally lie against individuals who engage in direct, personal misconduct against a

plaintiff, rather than those developing or applying government policy.  *Id.*  Indeed, a civil

complaint that "call[s] into question the formulation and implementation of a general policy"

imposes a "burden and demand" that might prevent Executive Branch officials "from devoting

the time and effort required for the proper discharge of their duties."  *Abbasi*, 137 S. Ct. at 1860.

It also bears noting that Congress declined to include a private cause of action when it passed the

PREA.  "If Congress has legislated pervasively on a particular topic but has not authorized the

sort of suit that a plaintiff seeks to bring under *Bivens*, respect for the separation of powers

demands that courts hesitate to imply a remedy."  *Klay v. Panetta*, 758 F.3d 369, 376 (D.C. Cir.

2014).

    Third, while Driever's individual-capacity claims for monetary damages should be

dismissed because *Bivens* does not provide that remedy, the Court also notes that qualified

---

case into a proper *Bivens* action.  In fact, as Defendants point out, Driever did, in fact, pursue at
least some of these available remedies in previous litigation.  *See* Defs.' MTD Mem. II at 7–9.

immunity would in any event shield Defendants from liability.  Qualified immunity protects officials from suits unless their actions are (1) plainly incompetent, or (2) committed with knowledge of violation of clearly established law.  *See Malley v. Briggs*, 475 U.S. 335, 341 (1989); *see also Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (finding that officials were entitled to qualified immunity because it was not clearly established that their conduct was unconstitutional).  Neither complaint states a claim for violating a clearly established constitutional or statutory right.

Generally, a prisoner has no constitutionally protected interest in her place of confinement, *Olim v. Wakinekona*, 461 U.S. 238, 248 (1983), and does not have a fundamental interest in the designation of others, *see Sandin v. Conner*, 515 U.S. 472, 484 (1995) (prisoners' protected liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Franklin v. District of Columbia*, 163 F.3d 625, 631, 634–35 (D.C. Cir. 1998) (unless a prisoner faces "extraordinary" treatment, "day-to-day" judgments about placement, housing, and classification are "ordinary consequence[s] of confinement for committing a crime").  In the end, Driever cites no case law that suggests that the constitutional claims she presents arise from clearly established law.  *See, e.g.*, *Mack v. Sample*, No. 3:16-cv-875 (VAB), 2016 WL 6902398 at *3 (D. Conn. Nov. 23, 2016) (finding that all reported cases asserting failure to protect based on the housing placement of transgender inmates involve claims filed by a transgender inmate and dismissing cisgender plaintiff's *Bivens* suit), *appeal dismissed*, No. 16–4331, 2017 WL 6806654 (2d Cir. Feb. 22, 2017, effective Mar. 15, 2017).

For these reasons, Driever's individual-capacity claims for monetary damages based on these constitutional claims must be dismissed.

16

### C.    Statutory Claims

Driever also brings or seeks to bring claims under three statutes: (1) the Religious

Freedom Restoration Act, (2) the Administrative Procedures Act; and (3) the Federal Tort

Claims Act.  For similar reasons already described above, each are subject to dismissal.

### 1.    Religious Freedom Restoration Act

Driever brings claims for violating the Religious Freedom Restoration Act in both the

complaint and proposed amended complaint.  Compl. ¶¶ 8, 31; Am. Compl. ¶¶ 15, 58.  RFRA

states that the government "shall not substantially burden a person's exercise of religion."  42

U.S.C. § 2000bb-1(a).  But "RFRA does not waive the federal government's sovereign immunity

for damages."  *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006).[10]

Thus, Driever is foreclosed from seeking monetary damages based on this claim.

 Additionally, Driever's requests for injunctive and declaratory relief under RFRA suffer

from the same standing problems as her constitutional claims.  A plaintiff may sue under RFRA

to "challenge large-scale policy decisions concerning the conditions of confinement imposed on

hundreds of prisoners" through injunctive relief, *Abbasi*, 137 S. Ct. at 1862–63.  But that plaintiff

still must establish her own standing, *see Singh v. Carter*, 185 F. Supp. 3d 11, 21 n. 4 (D.D.C.

2016) (finding that repercussions to other individuals, of a policy allegedly violative of RFRA,

---

[10] Driever brings the Court's attention to *Tanzin v. Tanvir*, 140 S. Ct. 550 (Mem. Nov. 22, 2019);
*see* Pl.'s Comb. Opp. ¶ 3, in which the Supreme Court has granted certiorari and heard oral
argument on October 6, 2020 as to whether the RFRA permits suits seeking money damages
against individual federal employees.  In that matter, the trial court dismissed the plaintiff's
individual capacity claims, finding that the RFRA does not permit the recovery of money
damages from federal officers, *Tanvir v. Lynch*, 128 F. Supp. 3d 756, 780–81 (S.D.N.Y. 2015),
and the Second Circuit reversed that particular determination, *Tanvir v. Tanzin*, 894 F.3d 449,
453 (2d Cir. 2018).  Without a ruling yet in *Tanzin*, this Court strictly follows the binding
precedent set by this Circuit, which does not recognize such an avenue of relief.  *See Webman*,
441 F.3d at 1026.

was "irrelevant" because plaintiff did not have standing to assert the legal rights or interests of third parties) (citing *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 794–95 (D.C. Cir. 2010) ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally . . . plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (cleaned up)).  Driever has not been incarcerated for two years, and she offers no reason to believe she will be again.  Thus, she lacks standing because she cannot show it is likely that injunctive or declaratory relief will redress any purported injury.  For these reasons, the Court will also dismiss Driever's RFRA claims.

## 2.    Administrative Procedure Act

Driever's proposed amended complaint seeks to add an APA claim.  Am. Compl. ¶¶ 19, 49. She alleges that Program Statement 5200.04, as set forth in the Manual, was not "listed in the Code of Federal Regulations for the required 'notice and comment' period."  *Id.* ¶ 19.  Thus, she alleges, the BOP failed to comply with notice and comment rulemaking when it promulgated the policy, and it is otherwise arbitrary and capricious.  Am. Compl. ¶¶ 49–50.

The APA waives the sovereign immunity of the United States for *non-monetary* claims against federal agencies, *see* 5 U.S.C. § 702 (emphasis added), "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law[,]" *id.* § 701(a).  Any claims for monetary damages under the APA are nonjusticiable.  *See Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011) (en banc) ("[T]here is no doubt Congress lifted the bar of sovereign immunity in actions not seeking money damages.").  So Driever can pursue equitable relief—and only equitable relief—through her APA claim.

But the Court must dismiss Driever's APA claim nonetheless.  To the extent she alleges

that the APA's notice-and-comment rulemaking procedures were not followed, those procedures

do not apply to "to interpretative rules, general statements of policy, or rules of agency

organization, procedure, or practice." 5 U.S.C. § 553(b)(A).  And BOP Program Statements, like

the one at issue here, are not subject to the APA's rulemaking provisions because they are

statements of internal policy.  *See* 5 U.S.C. § 553(b)(A); *Reno v. Koray*, 515 U.S. 50, 61 (1995)

(characterizing a BOP Program Statement as an internal agency guideline rather than a published

regulation subject to the rigors of the APA, including public notice and comment).  Thus, the

APA does not confer on Driever the right to comment on the policy at issue.  Moreover, to the

extent she asserts that the policy otherwise violates the APA, because she is no longer

incarcerated, she has identified no purported injury that equitable relief under that statute could

address.  Thus, she lacks standing as to any such claim.  For these reasons, the Court will dismiss

Driever's APA claim.

### 3.   Federal Tort Claims Act

Driever's proposed amended complaint also includes FTCA claims for negligence and

intentional infliction of emotional distress.  Am. Compl. ¶¶ 14, 31–7, 41–5.  The FTCA contains

a limited waiver of sovereign immunity, creating a remedy for certain torts committed by federal

employees in the scope of their employment.  *See* 28 U.S.C. §§ 1346(b), 2674.  Defendants argue

that these claims are premature because Driever has not exhausted her administrative remedies.

Defs.' MTA II Opp. at 3–4; Declaration of Alma G. Oben Regarding Tort Claims, Defs.' MTA

II Opp. Ex. 2, ECF No. 21-1, ¶¶ 3, 14, Ex. A.  The Court agrees.

The FTCA bars claimants from suing until they have exhausted their administrative

remedies.  *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also* 28 U.S.C. § 2675(a)

("[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency."). The FTCA exhaustion requirement is jurisdictional. *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987). To exhaust administrative remedies under the FTCA, a plaintiff must have presented the agency with "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim," and the agency must have either denied the claim in writing or failed to dispose of it within six months. *Id.* at 905–06.

Driever does not deny that she has failed to exhaust. Instead, she argues she did not proceed administratively because doing so would inevitably lead to a "dead end." Pl.'s Comb. Opp. ¶ 4. But because the FTCA's exhaustion requirement is jurisdictional, it cannot be waived. *Smith v. Clinton*, 253 F. Supp. 3d 222, 238 (D.D.C. 2017), *aff'd*, 886 F.3d 122 (D.C. Cir. 2018). A plaintiff must complete the administrative process before filing an FTCA claim, even if she believes that pursuing the grievance procedure would be futile. *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (finding that a court will not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). Because Driever did not pursue her administrative remedies, this Court lacks subject-matter jurisdiction, and it may not hear her FTCA claims. *See Lineberry v. BOP*, 923 F. Supp. 2d 284, 291 (D.D.C. 2013) (holding that federal prisoner admitted failure to submit an administrative claim through BOP prior to suing under the FTCA deprived the district court of subject-matter jurisdiction).

**IV.     Conclusion**

For all these reasons, the Court will grant Defendants' motions to dismiss, dismiss the original complaint, deny Driever's motion to amend, and dismiss the case.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 19, 2020