## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JEANETTE DRIEVER, | |
| *Plaintiff*, | |
| v. | Civil Action No. 19-1807 (TJK) |
| UNITED STATES OF AMERICA et al., | |
| *Defendants*. | |

## <u>MEMORANDUM OPINION</u>

Jeanette Driever, a former federal inmate, sued various government entities and officials to challenge a Bureau of Prisons policy that authorizes housing transgender prisoners according to their gender identity.  Proceeding pro se, she asserted violations of her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, as well as violations of the Religious Freedom Restoration Act, the Administrative Procedure Act, and the Federal Tort Claims Act.  In October 2020, the Court dismissed her complaint under Rules 12(b)(1) and (6) and denied as futile her attempt to amend it.  She now moves to reconsider on account of the purported impact of a subsequent Supreme Court case on the Court's earlier decision, and in the alternative, to extend her time to appeal.  For the reasons explained below, the Court will deny the motion in its entirety.

## I.      Background

Driever was incarcerated at Carswell Federal Medical Center ("FMC Carswell") for two stints before she was released from custody in April 2018.  ECF No. 13 at 4; *id.* n.3.  In June 2019—over a year later—she filed this suit against the United States, the United States Attorney General, the BOP Director, former Warden of FMC Carswell Jody Upton, "all BOP Wardens,"

"all BOP Directors of Psychology Services," and "unknown BOP employees[,]" in both their official and individual capacities ("Defendants").  In her initial complaint, she claimed that a Bureau of Prisons (BOP) policy, Program Statement 5200.04, violated her rights because it permitted the BOP to place transgender inmates in women's correctional institutions.  Complaint ("Compl."), ECF No. 1 ¶ 18.  In particular, she objected to transgender—mainly male-to-female—inmates sharing "cells, locker areas, showers, toilets, and other areas where bodily privacy is normatively protected" with female inmates.  Compl. ¶ 32.  She asserted violations of her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, requested injunctive and declaratory relief as well as monetary damages, *id.* ¶¶ 41–47, and also sought to bring the matter as a class action by seeking relief on behalf of "similarly situated federal female inmates."  *Id.* ¶ 2.

In January 2020, Defendants moved to dismiss Driever's official-capacity claims, ECF No. 13, and the individual-capacity claims, ECF No. 15.  The next day, the Court set a deadline for her to oppose Defendants' motions by February 21, 2020.  ECF No. 16.  Rather than do so, Driever moved to amend the complaint.  ECF No. 18.  The Court denied the motion without prejudice for failure to comply with LCvR 7(m).  *See* Minute Order of Mar. 31, 2020.  In June 2020, Driever again moved to amend her complaint, ECF No. 19.  The proposed amended complaint ("Am. Compl."), ECF No. 19-1, added claims under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1(a), the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), the Administrative Procedure Act (APA), 5 U.S.C. § 702, and for negligence and intentional infliction of emotional distress, Am. Compl. ¶¶ 14, 41–45.  The proposed amended complaint also sought to join two more pro se plaintiffs, Rhonda Fleming and Stacey Shanahan, *id.* at caption, ¶¶ 2–3, and four more defendants: former BOP Director Charles

Samuels, Warden E. Strong (current warden of the Federal Correctional Institution in

Tallahassee, Florida) ("FCI Tallahassee"), Warden C. Coil (former warden of FCI Tallahassee),

and Warden Julie Nichols (former warden of the Federal Correctional Institution in Waseca,

Minnesota) ("FCI Waseca"), *id.* at caption, ¶¶ 7–10

On October 19, the Court granted Defendants' motions to dismiss under Rules 12(b)(1)

and (6) of the Federal Rules of Civil Procedure.[1]  *See* ECF No. 30; *see also Driever v. United*

*States*, No. 19-cv-1807, 2020 WL 6135036 (D.D.C. Oct. 19, 2020).  The Court also denied as

futile Driever's motion for leave to amend her complaint, ECF No. 19, after determining that the

proposed amended complaint's claims would also be subject to dismissal.  In its Opinion, the

Court noted the potential relevance of *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), a Supreme Court

case that had been argued but was awaiting decision.  *See Driever*, 2020 WL 6135036, at *8.  On

December 10, 2020, the Supreme Court decided *Tanzin*.  And on January 8, 2021, Driever filed

the pending motion to reconsider and reopen the case, as well as to extend her time to appeal.

Motion to Reopen ("Mot. for Recon."), ECF No. 31.

## II.     Analysis

### A.      Motion to Reconsider

Driever moves for reconsideration under Federal Rules of Civil Procedure 60(b)(5) and

(6).  "The decision to grant or deny a rule 60(b) motion is committed to the discretion of the

District Court."  *Kareem v. FDIC*, 811 F. Supp. 2d 279, 282 (D.D.C. 2011).  Motions for

reconsideration are "disfavored" and "granting . . . such a motion is . . . an unusual measure."

*Cornish v. Dudas*, 813 F. Supp. 2d 147, 148 (D.D.C. 2011).  Plaintiff's motion turns on her

---

[1] The Court assumes familiarity with its prior Opinion and Order.

assertion that the Supreme Court's subsequent decision in *Tanzin* impacts this Court's dismissal of her RFRA claim.

Under Rule 60(b)(5), a court "may relieve a party" from a final judgment or order if "it is based on an earlier judgment that has been reversed or vacated." Driever's invocation of Rule 60(b)(5) is misplaced. Rule 60(b)(5) allows for relief from a judgment when "the present judgment is based on the prior judgment in the sense of claim or issue preclusion"—not "merely because a case relied on as precedent by the court in rendering the present judgment has since been reversed." Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2863 & n.11 (3d ed.) (collecting cases).

That leaves Rule 60(b)(6), which allows for relief from a judgment under "extraordinary circumstances." "[C]hanges in case law that occur after a final judgment has been entered are generally not the type of 'extraordinary circumstances' which warrant 60(b)(b) reconsideration," especially when a plaintiff has not pursued an appeal. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 231 (D.D.C. 2011) (collecting cases). But in this case, perhaps relief under Rule 60(b)(6) remains available to Driever, because although she did not note a timely appeal, she did request that her time to appeal be extended, and she did so within the time limit to make such a request under Federal Rule of Appellate Procedure 4(a)(5)(A)(i). *See also Polites v. U.S.*, 364 U.S. 426, 433 (1960) ("[W]e need not go so far here as to decide that when an appeal has been abandoned or not taken because of a clearly applicable adverse rule of law, relief under Rule 60(b) is inflexibly to be withheld when there has later been a clear and authoritative change in governing law."). On the other hand, Rule 60(b)(6) may be invoked only if no other avenue under Rule 60(b) is available to a plaintiff. *Goland v. CIA*, 607 F.2d 339, 372–73 (D.C. Cir. 1979). And in light of her pro se status, the Court might instead construe her

motion as brought under Rule 60(b)(1)).  Although that rule allows for relief in the cases of
"mistake, inadvertence, surprise, or excusable neglect," the D.C. Circuit has permitted plaintiffs
to seek relief under that rule based on a change in intervening law that occurred during the
plaintiffs' time for appeal, when the plaintiffs also filed a motion for reconsideration within that
same appeal period.  *D.C. Federation of Civic Ass'ns v. Volpe*, 520 F.2d 451, 453 (D.C. Cir.
1975).  But again, Driever is not in precisely the same boat as the plaintiffs in *Volpe*.  Although
*Tanzin* was similarly decided within the sixty-day time limit to appeal the Court's original
decision under Federal Rule of Appellate Procedure 4(a)(1)(B), Driever did not move to
reconsider and extend her time to appeal until after the time to appeal had expired.  In the end,
though, the Court need not resolve the puzzle of whether Driever's motion is properly brought
under Rule 60(b)(6), Rule 60(b)(1), or neither rule.  Under either standard, there is no basis to
grant it, because *Tanzin* does not affect the Court's original conclusion that her complaint and
proposed amended complaint were subject to dismissal.

     Driever's complaint and proposed amended complaint brought several claims, including
a RFRA claim, against various federal officials in their official and individual capacities.  And
for purposes of this motion, her RFRA claim for monetary damages is the only one that matters.
This Court dismissed her RFRA claim for two reasons: (1) "RFRA does not waive the federal
government's sovereign immunity for damages," *Driever*, 2020 WL 6135036, at *8 (citing
*Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006)); and (2) monetary
damages were unavailable against individual federal employees, *id.* at *8 & n.10.  Driever now
argues that the Court should reconsider its decision in light of *Tanzin*, in which the Supreme
Court held that RFRA permits suits for money damages against federal officials in their
individual capacities.  Mot. for Recon. at 1.  But for the reasons explained below, *Tanzin* does

not change the Court's prior determination that monetary damages are unavailable for Driever's

RFRA claim against any Defendant here, in either an official or individual capacity.

### 1.       Official-Capacity Claims

Driever's motion suggests that *Tanzin* might affect the Court's analysis as to whether

sovereign immunity applies to her official-capacity RFRA claims.  *See* Mot. for Recon. ¶ 2; ECF

No. 33 ("Recon. Reply") ¶ 1.  But it does not.  The Supreme Court made clear that its analysis

was limited to "a suit against individuals, who do not enjoy sovereign immunity."  *Tanzin*, 141 S.

Ct. at 493.  As a result, the Court's determination that "RFRA does not waive the federal

government's sovereign immunity for damages" remains faithful to Circuit precedent.  *Webman*,

441 F.3d at 1026.

### 2.       Individual-Capacity Claims

Driever's proposed amended complaint raises RFRA individual-capacity claims against

four officials: Samuels, Coil, Nichols, and Upton.  Am. Compl. ¶¶ 7–11, 46–48.  The Court

dismissed these claims because it determined that Driever did not have standing to pursue

injunctive or declaratory relief, and monetary damages were unavailable.[2]  *Driever*, 2020 WL

---

[2] The Court's Opinion contained two grounds for dismissal of Driever's individual-capacity
RFRA claims for monetary damages: (1) the Court suggested that Circuit precedent did not
recognize monetary damages for individual-capacity RFRA claims; and (2) the Court found that
Defendants were shielded by qualified immunity, impacting official-capacity claims only.  Upon
review, it appears that the Court
miscited *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) for the
proposition that monetary damages were unavailable for individual-capacity RFRA claims.
Instead, *Webman* held that RFRA does not waive the federal government's sovereign immunity
from suits for damages.  *See Patel v. Bureau of Prisons*,
125 F. Supp. 3d 44, 53 (D.D.C. 2015).  Regardless, the Court's determination that Defendants
were shielded by qualified immunity because "[n]either complaint states a claim for violating a
clearly established constitutional or statutory right" justified dismissal of these claims.  *Driever*,
2020 WL 6135036, at *8.  And even after *Tanzin*, as discussed further below, qualified immunity
continues to apply to all Defendants named in their individual capacities.  The Court also notes
that this error on the Court's part was not a ground for Driever's motion for reconsideration, nor

6

6135036, at *8 & n.10.  But while the Supreme Court clarified in *Tanzin* that monetary damages are available for individual-capacity RFRA claims, that does not mean they are available in every case.  And *Tanzin* does not affect the Court's previous determination that monetary damages are not available to her, and that these claims were subject to dismissal.

### a.    Claim against Samuels

Samuels, a former BOP director, is protected by qualified immunity.  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When analyzing Driever's *Bivens* claim for damages, the Court noted that qualified immunity "shield[s] Defendants from liability" because Driever did not "state[] a claim for violating a clearly established constitutional or statutory right."  *Driever*, 2020 WL 6135036, at *8.  *Tanzin* did not change whether qualified immunity applies to Samuels, as well as to Strong, Coil, and Nichols, for that matter.  In fact, *Tanzin* suggests that qualified immunity remains a viable defense to individual-capacity RFRA claims.  141 S. Ct. at 492 & n.*; *see also Rasul v. Myers*, 563 F.3d 527, 533 n.6 (D.C. Cir. 2009) (citing *Rasul v. Myers*, 512 F.3d 644, 676 & n.5 (D.C. Cir. 2008) ("[D]efendants are entitled to qualified immunity against [ ] RFRA claim[s].").

Thus, even after *Tanzin*, for a plaintiff to prevail on a claim for monetary damages against a federal official in his personal capacity for a violation of her RFRA rights, the "proponent of a purported right [still] has the burden to show that the particular right in question

---

could it have been.  "[A] mistake of law cannot be reached under Rule 60(b)(1) where . . . no notice of appeal was timely filed from the order in which the mistake is alleged to have occurred and the time for filing such a notice of appeal had expired when the Rule 60(b) motion was filed."  *Orner v. Shalala*, 30 F.3d 1307, 1309 (10th Cir. 1994); *see also Brown v. Reich*, No. 96-5038, 1997 WL 68320, at *1 (D.C. Cir. Jan. 15, 1997).

was clearly established for qualified-immunity purposes." *Daugherty v. Sheer*, 891 F.3d 386,

390 (D.C. Cir. 2018) (cleaned up). This inquiry turns on the "objective legal reasonableness of

the action, assessed in light of the legal rules that were clearly established at the time it was

taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Driever premised her RFRA claim on the

broad assertion that she has a right to modesty around members of the opposite sex. But the

dispositive question was "whether the violative nature of *particular* conduct is clearly

established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original). This inquiry "must

be undertaken in light of the specific context of the case, not as a broad general proposition."

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Thus, the question was whether Driever had

shown that she had a clearly established right not to be housed with female transgender

prisoners. *See also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to

ensure that before they are subjected to suit, officers are on notice their conduct is unlawful")

(quotation marks omitted).

Driever failed to show this right was clearly established under RFRA. She asserted that

the "transgender policy . . . shock[s] the contemporary conscience," Am. Compl. ¶ 54, and that

"[a]ny reasonable person would agree that it is wrong," ECF No. 23 at 1. But she cited no case

law to support the assertion that this right was clearly established (nor has the Court found any)

and she does not otherwise advance such an argument. *See Bame v. Dillard*, 637 F.3d 380, 384

(D.C. Cir. 2011) (noting that to determine clearly established law, courts "look to cases from the

Supreme Court and this [Circuit], as well as to cases from other courts exhibiting a consensus

view—if there is one").[3] In particular, Driever did not show that "the 'contours of the right'

---

[3] Driever's only reference to legal authority is a citation to *Harris v. Miller*, 818 F.3d 49 (2d Cir. 2016). In *Harris*, the Second Circuit vacated a district court's grant of summary judgment for

were 'sufficiently clear' so that a 'reasonable official would understand that what he is doing

violates that right,'" as she must. *Cockrell-El v. District of Columbia*, 937 F. Supp. 18, 22

(D.D.C. 1996) (citing *Anderson*, 483 U.S. at 640).  Thus, the RFRA claim against Samuels in his

individual capacity remains subject to dismissal.

        **b.**        **Claims against Coil and Nichols**

Driever lacks standing to bring her claims against Coil and Nichols, the former wardens

of FCI Tallahassee and FCI Waseca, respectively, even after *Tanzin*.  Federal courts only have

subject matter jurisdiction if there is a "Case" or "Controvers[y]" ripe for decision, U.S. Const.

Art. III, § 2, and with no actual or threatened injury, no such case or controversy exists.  In

addition, the alleged "injury must be 'concrete, particularized, and actual or imminent; fairly

traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty

Int'l*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139,

149 (2010)).  And the injury must be "fairly traceable" to a defendant's conduct and "not the

result of the independent action of some third party not before the court." *Lujan v. Def. of

Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  Standing is, of course, a jurisdictional issue that

---

correctional officers who had conducted a forcible body cavity search of a female prisoner.  That
case does not help Driever show that the right she asserts here was clearly established.  To begin
with, the legal claims at issue were different there, as the plaintiff asserted that her Fourth and
Eighth Amendment rights were violated, as opposed to her rights under RFRA.  And the Second
Circuit did not determine that "there was no qualified immunity for the[] officers," as Driever
claims, but left the question for the district court to consider on remand.  ECF No. 23 at 4.  As a
result, the Second Circuit's opinion in *Harris* does not constitute clearly established law
"particularized" to the facts here.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also
Mullenix*, 577 U.S. at 13 (noting that a "conclusion that [Defendant's] conduct was objectively
unreasonable does not follow immediately from—and thus is not clearly established by—this
principle.") (cleaned up).

may be raised by the court at any time.  *See Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 254–55 (1994).

Driever failed to allege that Coil or Nichols caused her the requisite injury for standing. According to Driever, Coil is the "former warden of FCI-Tallahassee" who "violated the constitutional and statutory rights of Plaintiffs Shanahan and Fleming."  Am. Compl. ¶ 9.  And Nichols is the "former warden of FCI-Waseca" who "violated the constitutional and statutory rights of Plaintiffs Shanahan and Fleming."  Am. Compl. ¶ 10.  But Shanahan and Fleming are not plaintiffs,[4] and Driever did not allege that Coil or Nichols personally caused *her* any injury in fact.  She has not even alleged that she was ever housed at FCI Waseca or FCI Tallahassee. Thus, she failed to raise a case or controversy sufficient to satisfy Article III standing.  Thus, her RFRA claims against Coil and Nichols remain subject to dismissal.[5]

### c.    Claim against Upton

Driever's claim against Upton, former Warden of FMC Carswell, fail because they are barred by res judicata, an analysis also unaffected by *Tanzin*.[6]  Under res judicata, "a final

---

[4] As noted in the Court's prior Opinion, Fleming and Shanahan were still under federal custody at FCI Tallahassee at that time, and were, at some point, designated to FCI Waseca.  *Driever*, 2020 WL 6135036, at *4.  The Court declined to allow their joinder as plaintiffs, see *id.*, because neither Fleming nor Shanahan submitted the requisite filing fees or applications to proceed IFP, see 28 U.S.C. § 1915(a)(1), and under the Prison Litigation Reform Act ("PLRA"), all prisoner-litigants must pay filing fees in full.  *See Asemani v. USCIS*, 797 F.3d 1069, 1072 (D.C. Cir. 2015).  Moreover, a pro se litigant can represent only herself in federal court, and she cannot serve as counsel for others or as a class representative.  *See Driever*, 2020 WL 6135036, at *4 (citing 28 U.S.C. § 1654; *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984); *DeBrew v. Atwood*, 792 F.3d 118, 132 (D.C. Cir. 2015)).

[5] Even if Driever had standing to pursue claims against Coil or Nichols, qualified immunity would also protect them for the same reasons discussed related to Samuels.

[6] Driever's proposed amended complaint alleges only that Upton "violated the constitutional and statutory rights of Plaintiffs Shanahan and Fleming."  Am. Compl. ¶ 10.  But elsewhere in the

judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In February 2017, Driever intervened as a plaintiff in a lawsuit (also involving Fleming, among others) filed in the United States District for the Northern District of Texas. *See Rhames v. United States*, No. 7:17-cv-00009-O, ECF No. 2 (Mot. to Intervene filed Feb. 3, 2017). The suit sought damages and asserted, among other claims, individual-capacity violations of RFRA as a result of FMC Carswell's acceptance of "men that self-identify as women," based on the same BOP policy challenged here. *See id.* at 2; *see also id.*, ECF No. 59 (Third Amended Compl. filed May 12, 2017) ¶¶ 10, 13, 18–67, 71, 74, 87–90, 97–9, Ex. H. In December 2017, Driever voluntarily dismissed, *with prejudice*, all her individual-capacity claims, and most pertinently, those against Upton. *Id.* at ECF No. 138 (Notice of Dismissal).[7]

"[A] stipulation within the meaning of Rule 41(a)" that "provides for dismissal with prejudice" serves as "res judicata of the matters covered by the cause of action and counterclaim therein." *Burns v. Fincke*, 197 F.2d 165, 166 (D.C. Cir. 1952); *Brown v. Amtrak Corp.*, No. 03-7033, 2003 WL 22433755, at *1 (D.D.C. Oct. 27, 2003) ("A dismissal 'with prejudice' is a final

---

proposed amended complaint, Driever alleges harm by "past and present wardens" against all plaintiffs, and she alleges that she had certain interactions with Upton. *Id.* ¶¶ 43–45. Thus, construing her complaint liberally, the Court finds that Driever has standing to bring her RFRA claim against Upton. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[7] After the dismissal the individual-capacity claims, only Driever's claims for injunctive relief remained. Given the May 2018 Manual Change Notice, and her decision to proceed pro se while the litigation was pending, the court ordered her to file an amended complaint by July 11, 2018. *See Rhames v. United States*, No. 7:17-cv-00009-O at ECF No. 187 (Order filed Jun. 11, 2018). After several extensions, she failed to do so, and in January 2019, the court dismissed the remaining injunctive claims without prejudice under Federal Rule of Civil Procedure 41(b) for failure to prosecute. *Id.* at ECF No. 219 (Dismissal Order) at 2, *recon. denied*, *id.* at ECF No. 235 (Order filed Apr. 12, 2019).

judgment on the merits which bars further litigation between the same parties."). Here, Driever's voluntary dismissal with prejudice of the same claim she now seeks to press against Upton renders the claim barred by res judicata. Thus, it remains subject to dismissal.[8]

### 3.     Other Issues for Reconsideration

While Driever's motion relies only on the potential impact of *Tanzin* on the Court's prior Opinion, her reply brief appears to ask the Court to reconsider the Court's (1) refusal to add Fleming as a plaintiff, *see* Recon. Reply ¶¶ 5–7, and (2) dismissal of her FTCA claims for failure to exhaust, *see id.* ¶ 2. But "[a]rguments raised for the first time in a reply brief are waived" so the Court need not, and will not, consider them. *Nippon Shinyaku Co. v. Iancu*, 369 F. Supp. 3d 226, 240 n.8 (D.D.C. 2019); *Lindsey v. District of Columbia*, 879 F. Supp. 2d 87, 95 (D.D.C. 2012).[9]

---

[8] Even if this claim was not barred for res judicata, qualified immunity also protects Upton.

[9] Even if the Court *did* consider them, Driever identifies no basis under Rule 60(b) for the Court to reconsider its prior ruling. She advances several new arguments why the court should join Fleming as a plaintiff. She says that Fleming, incarcerated at FCI Tallahassee, "is in a different prison [than FMC Carswell], with different conditions, and there is a new administration in the White House[.]" Recon. Reply ¶ 5. And she suggests that Fleming is in danger because of the conditions at FCI Tallahassee. *See id.* ¶ 7. She also notes that Fleming was previously granted IFP status by the Northern District of Texas in another case. *See id.* ¶ 6. But all of that notwithstanding, Fleming has not submitted the requisite filing fee or application to proceed IFP, see 28 U.S.C. § 1915(a)(1). Nor can Fleming proceed IFP under Section 1915(g). *Driever*, 2020 WL 6135036, at *4 (citing *Fleming v. Medicare Freedom of Info. Grp.*, No. 15-1135, 2018 WL 3549791, at *3 (D.D.C. July 24, 2018); *Fleming v. Ratliff*, 235 F.3d 1341, WL 1672906, at *1 (5th Cir. 2000) (per curiam) (unpublished table disposition); *Fleming v. Riehm*, No. 16-3116, 2016 WL 7177605, at *1 (D. Minn. Dec. 9, 2016)). And as a pro se litigant, Driever cannot serve as counsel for Fleming, nor serve as a class representative. *See* Mem. Op. at 8. In addition, Driever challenges this Court's previous dismissal of her FTCA claim for failure to exhaust. Recon. Reply ¶ 2. But because the FTCA's requirement is jurisdictional, the Court had no power to waive it, even though Driver claimed exhaustion would be futile. *See Smith v. Clinton*, 253 F. Supp. 3d 222, 238 (D.D.C. 2017); *see also* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency."). Driever argues only that the exhaustion

**B.      Motion to Extend Time for Appeal**

In the alternative, Driever asks the Court to extend her appeal deadline for "excusable neglect" under Federal Rule of Appellate Procedure 4(a)(5)(A)(ii).  A court may extend the appeal time if a plaintiff has shown "excusable neglect or good cause."  Fed. R. App. P. 4(a)(5).  An inquiry into excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  The relevant factors include (1) "the danger of prejudice to the [non-moving party];" (2) "the length of the delay and its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within the reasonable control of the movant;" and (4) "whether the movant acted in good faith."  *Id.*

Driever argues that her failure to timely appeal qualifies as excusable neglect only because before the Supreme Court decided *Tanzin*, she believed an appeal would be frivolous.  ECF No. 31 at 1.  Of course, that reason could not excuse her failure to appeal any issue the Court decided in its original Opinion that has nothing to do with *Tanzin*.  As for the rest, while the Court weighs all relevant circumstances to determine whether neglect is excusable, the most important factor is "the reason for the delay and whether the delay was within the reasonable control of the moving party."  *Webster v. Pacesetter, Inc.*, 270 F. Supp. 2d 9, 14 (D.D.C. 2003).  The Supreme Court decided *Tanzin* on December 10, 2020, within the sixty-day window for Driever to appeal this Court's decision under Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure.  And even before *Tanzin* was decided, Driever was on notice that the case was

---

requirement does not apply to former prisoners who are no longer incarcerated.  In this regard, she confuses the exhaustion requirements for the PLRA, which apply to prisoners, and the exhaustion requirements for the FTCA, which apply to all potential plaintiffs.  *See, e.g, Khan v. Holder*, 134 F. Supp. 3d 244, 250 (D.D.C. 2015).

pending and that it could have an impact on her claims.  *See Driever*, 2020 WL 6135036, at \*8 n.10; *see also* ECF No. 23 at 4.  Driever had more than a week after the decision in *Tanzin* to consider and timely notice an appeal.  Instead, she filed her motion on January 8, 2021, almost a month later.  *See* ECF No. 31.  She does not provide any reason why she did not timely notice her appeal after *Tanzin* was decided, or why she did not request more time to appeal until over a month later.  She has therefore has not shown excusable neglect or good cause.  Thus, the Court will deny Driever's motion to extend time to appeal.

## III.     Conclusion

For all these reasons, Driever's Motion, ECF No. 31, will be denied.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 14, 2021